**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

LOANDEPOT.COM, LLC

                                                                 PLAINTIFF

v.

                                        No.  <u>3:26-CV-91-GHD-RP</u>

NEXA MORTGAGE, LLC

                                                   DEFENDANT

## <u>COMPLAINT</u>

### THE PARTIES

1. Plaintiff loanDepot.com, LLC ("loanDepot") is a Delaware limited liability company with its principal place of business in Orange County, California.

2. Defendant NEXA Mortgage, LLC ("NEXA") is a Delaware limited liability company with its principal place of business in Mesa, Arizona.

### JURISDICTION AND VENUE

3. This Court has federal subject matter jurisdiction over Counts I and 2, claims under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. ("DTSA") and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. This Court has supplemental jurisdiction over the remaining counts because they form part of the same case or controversy as Count I. *See* 28 U.S.C. § 1367.

4. Venue is proper in this Court under 28 U.S.C. §1391(b)(1) because NEXA conducts business in Mississippi and many of the alleged acts occurred in Mississippi.

**FACTUAL ALLEGATIONS**

5.      loanDepot and NEXA are competitors in the business of making home mortgage and home equity loans.

6.      loanDepot prides itself on its proprietary, cutting-edge technology that provides a safe software platform for consumers to securely transfer their private income, employment, credit, tax, and asset information for the purpose of applying for a loan with loanDepot.

7.      loanDepot, like NEXA, employs numerous mortgage loan originators across the United States.

8.      In 2025 and early 2026, Jennifer Spicer and Velvet Chalet Robbins were employed by loanDepot as licensed mortgage loan originators in northern Mississippi (collectively "Former Employees").

9.      loanDepot invested in the Former Employees, providing training, access to confidential and proprietary trade secret information as well as customer and referral source introductions and leads. The Former Employees were also compensated for their work. In return, the Former Employees entered into agreements with loanDepot which include certain narrow covenants governing their conduct during and after their employment. These covenants include a provision restricting the use and disclosure of loanDepot confidential information along with strict adherence to all state and federal laws and regulations that apply to the mortgage lending business.

10.      By virtue of their positions at loanDepot, the Former Employees were entrusted with volumes of non-public, personal information of customers, applicants and borrowers protected by federal and state laws and regulations, which may not be disclosed to third parties, and which may be used only for narrowly prescribed purposes.

2

11. This information includes compilations of customer names, addresses, personal identifying information and financial information.

12. The Former Employees had access to loanDepot's custom-developed and proprietary training materials, job aids, and supplier, vendor, and referral source information.

13. Customer privacy and the non-disclosure of confidential customer information are important to loanDepot, and it would be seriously harmed by the breach of customer privacy or unauthorized disclosure of this confidential information.

14. In addition, as licensed mortgage loan originators, the Former Employees had to comply with the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 ("GLBA"), which governs the treatment of confidential, nonpublic information of consumers by financial institutions, along with comparable state laws and regulations governing consumer privacy.

15. NEXA knew of these contractual restrictions (and has similar restrictions on its own employees) but willfully induced the Former Employees to violate them prior to employing the Former Employees in January 2026. In the months leading to their departures, the Former Employees accessed and misappropriated confidential and trade secret documents about loanDepot's business methods, its employees, and its clients; information that, in the hands of NEXA, was used to convert customers to NEXA and away from loanDepot. NEXA aided and abetted the Former Employees in the illegal transfer and now retention of this proprietary and protected confidential information besides independently engaging in numerous acts that violate state and federal laws.

16. loanDepot has commenced arbitrations against the Former Employees pursuant to binding arbitration agreements with them and these proceedings remain ongoing.

17. NEXA knowingly assisted, if not orchestrated, the Former Employees' breaches of these contractual and legal restrictions to obtain a competitive advantage over loanDepot.

18. loanDepot seeks damages and permanent injunctive relief against NEXA for its misappropriation of loanDepot's trade secrets, aiding and abetting breaches of fiduciary duty, unfair competition, unjust enrichment, unfair trade practices, and tortious interference with loanDepot's contracts and prospective economic advantage.

19. Despite demand, and specifics provided about the private, proprietary, and trade secret information and the transfer of same, NEXA has refused to return the converted data and has continued to retain it for its purposes and use.

## COUNT 1: MISAPPROPRIATION OF TRADE SECRET 18 USC § 1836

20. loanDepot realleges all allegations in paragraphs 1-19 above as if copied herein.

21. Misappropriation of a trade secret includes the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

22. The customer-contact and other compilation information developed by loanDepot, a protected trade secret, was taken by the Former Employees with the help of NEXA manager Dan Fouts and other NEXA employees and then knowingly and maliciously used by NEXA to the detriment and damage of loanDepot all of which constitutes a violation of 18 USC § 1836.

23. loanDepot is entitled to all economic damages attributable to NEXA's violation of 18 USC §1836 along with exemplary damages and reasonable attorney fees and costs.

## COUNT 2: COMPUTER FRAUD AND ABUSE 18 USC § 1030

24. loanDepot realleges all allegations in paragraphs 1-23 above as if copied herein.

4

25.     Dan Fouts, on behalf of and with authority from NEXA, directed and encouraged the Former Employees to access the protected loanDepot computers to obtain confidential and trade secret information for the benefit of NEXA and to the detriment of loanDepot.

26.     loanDepot is entitled to all economic damages and injunctive relief under 18 USC §1030(g) as well as all costs incurred by loanDepot in investigating the computer breaches by NEXA.

## COUNT 3: MISSISSIPPI UNIFORM TRADE SECRETS ACT ("MUTSA")

27.     loanDepot realleges all allegations in paragraphs 1-26 above as if copied herein.

28.     Misappropriation of a trade secret includes the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means. Miss. Code Ann. § 75-26-3.

29.     The customer-contact and other compilation information developed by loanDepot, a protected trade secret, was taken by the Former Employees with the help of NEXA manager Dan Fouts and other NEXA employees and then knowingly and maliciously used by NEXA to the detriment and damage of loanDepot all of which constitutes a violation of Miss. Code Ann. § 75-26-1.

30.     loanDepot is entitled to all economic damages attributable to NEXA's violation of MUTSA along with exemplary damages and reasonable attorney fees and costs. Miss Code Ann. §§ 75-26-7, 75-26-9.

31.     loanDepot is further entitled to injunctive relief to abate the misappropriation of its confidential and trade secret information. Miss. Code Ann. § 75-26-5.

**COUNT 4: CONVERSION OF CONFIDENTIAL BUSINESS INFORMATION**

32.     loanDepot realleges all allegations in paragraphs 1-31 above as if copied herein.

33.     The Former Employees with the help of NEXA manager Dan Fouts and other NEXA employees, intentionally, and without lawful justification, exercised dominion over loanDepot's property, including its confidential and proprietary information and trade secrets, to deprive or interfere with loanDepot's right to use, control, and enjoy that property.

34.     As a result, loanDepot has suffered, and will continue to suffer damages and loss.

35.     Such actions were intentional, willful, wanton, and malicious, and justify the imposition of exemplary damages.

**COUNT 5: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

36.     loanDepot realleges all allegations in paragraphs 1-35 above as if copied herein.

37.     loanDepot has developed and maintained economic relationships with prospective and existing applicants and borrowers.

38.     The Former Employees knew the existence of those economic relationships and assisted in cultivating those economic relationships in their employment with loanDepot.

39.     The Former Employees with the help of NEXA manager Dan Fouts and other NEXA employees, intentionally, maliciously, and without lawful privilege or justification, interfered with loanDepot's economic relationships by diverting the business of prospective and existing applicants and borrowers to NEXA, using misappropriated confidential and trade secret information belonging to loanDepot.

40.     As a result, loanDepot has sustained damages and loss and will continue to suffer monetary, competitive, and irreparable harm.

41. Such conduct was willful, wanton, malicious, and outrageous, thereby entitling loanDepot to an award of punitive damages.

## CLAIM FOR INJUNCTIVE RELIEF

42. loanDepot realleges all allegations in paragraphs 1-41 above as if copied herein.

43. Despite demand, NEXA and its agents continue to possess loanDepot's confidential and trade secret information for its purposes and use.

44. This unauthorized use poses a continuous threat to loanDepot's customer relationships and customer privacy, causing irreparable harm that cannot be adequately compensated by monetary damages alone.

45. The sensitive nature of the information NEXA wrongfully possess, which includes customer data and proprietary business strategies, heightens the risk of further disclosure and competitive exploitation.

46. Thus, injunctive relief is necessary to prevent further misuse and irreparable harm to loanDepot, and to protect customer privacy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, loanDepot.com, LLC, prays for the following relief:

1. Preliminary and permanent injunctive relief requiring NEXA to (a) return and not use loanDepot's property, including its confidential and trade secret information; (b) adhere to prophylactic measures designed to verify compliance with the duties in section (a); (c) identify all parties, including any NEXA employees that accessed, handled, or otherwise interacted with loanDepot's property, including its confidential and trade secret information; and (d) submit to a forensic search of loanDepot's confidential and trade secret information and to whom such

information was shared. loanDepot requests and is entitled to expedited discovery to explore the extent to which Respondent has transferred loanDepot's property and caused it damage.

2.    Awarding loanDepot monetary damages, including, but not limited to, all amounts necessary to compensate loanDepot for NEXA's wrongful activities, including compensatory damages, punitive damages, reasonable attorney's fees, and the cost of any forensic investigation.

RESPECTFULLY SUBMITTED, this the 20th day of April 2026.

**LOANDEPOT.COM, LLC**

BY: *Watty Morrison*

**Walter C. Morrison, IV (MSB NO. 9653)**
**Gainsburgh, Benjamin, David,**
** Meunier & Warshauer, LLC**
240 Trace Colony Park Drive, Suite 100
Ridgeland, Mississippi 39157
Telephone: (601) 933-2054
E-mail: wmorrison@gainsben.com

***Counsel for loanDepot.com, LLC***

8